**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:21-cv-20443-DPG

ODETTE BLANCO DE FERNANDEZ *née*
BLANCO ROSELL, *et al.*,

                                   *Plaintiffs*,

          v.

CROWLEY HOLDINGS, INC.; CROWLEY
MARITIME CORPORATION; CROWLEY
LINER SERVICES, INC.; CROWLEY LATIN
AMERICA SERVICES, LLC; and CROWLEY
LOGISTICS, INC.

                                   *Defendants*.

**DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

<u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.       PLAINTIFFS LACK ARTICLE III STANDING ............................................... 4

        A.    Plaintiffs Do Not Have, and Have Never Had, a Legally Protected
             Interest in Excluding or Controlling Crowley's Calling at the ZEDM
             Container Terminal ........................................................................................ 5

        B.    Plaintiffs Have Not Been Harmed by Crowley's Alleged
             "Trafficking" and, Therefore, Have Not Suffered an Injury in Fact .............. 6

        C.    Any Purported Injury Is Not Fairly Traceable to Crowley's Alleged
             Conduct ........................................................................................................ 9

II.      THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT
       ADEQUATELY ALLEGE THAT CROWLEY HAS TRAFFICKED IN ANY
       CONFISCATED PROPERTY ........................................................................... 13

        A.    Plaintiffs Do Not Own a Claim to the Container Terminal or the 70-
             Year Concession in Which They Allege Crowley "Traffics" ...................... 14

        B.    The Allegations Do Not Raise a Plausible Inference that Crowley's
             Alleged Conduct Constitutes "Trafficking" .................................................. 16

        C.    The Complaint Raises an Inference That Crowley's Conduct *Does
             Not* Constitute "Trafficking" ....................................................................... 19

III.     NONE OF THE PLAINTIFFS ARE ELIGIBLE TO SUE UNDER THE HELMS-
       BURTON ACT ................................................................................................. 21

        A.    The Complaint Fails to Raise a Plausible Inference that Any of the Plaintiffs
             Own a Claim to Any of the Property in Which they Allege Crowley
             "Traffics" .................................................................................................... 21

        B.    Even if the Individuals Named in the Confiscation Order Acquired Claims
             to the Confiscated Property, the Only Proper Plaintiff is Odette Blanco de
             Fernandez ................................................................................................... 22

             i.    Other than Odette Blanco de Fernandez, none of the Plaintiffs
                     acquired their claims before March 12, 1996 ................................... 23

             ii.    The Estate Plaintiffs are not proper plaintiffs under the Act ............. 25

i

IV.    TITLE III VIOLATES THE DUE PROCESS CLAUSE BECAUSE ITS VAGUE
LIABILITY PROVISIONS LEAD TO EXCESSIVE AND ARBITRARY PENALTIES
.................................................................................................................................. 26

CONCLUSION........................................................................................................................... 28

REQUEST FOR HEARING........................................................................................................ 29

**TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................13, 18, 19

*De Fernandez v. A.P. Moller Maersk A.S*,
   No. 2:21-cv-339 (E.D. La. July 6, 2021) ...............................................................15

*De Fernandez v. Seaboard Marine, LTD.*,
   No. 1:20-cv-25176-Bloom/Otazo-Reyes (S.D. Fla. May 11, 2021) ...................15

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ..............................................................................................27

*Garcia-Bengochea v. Carnival Corp.*,
   407 F. Supp. 3d 1281 (S.D. Fla. 2020) .............................................................20, 22

*Garcia-Bengochea v. Carnival Corp.*,
   No. 1:19-cv-21725-JLK, 2020 WL 4590825 (S.D. Fla. July 9, 2020) ..................23

*Giaccio v. State of Pa.*,
   382 U.S. 399 (1966) ..............................................................................................27

*Glen v. Am. Airlines, Inc.*,
   No. 4:20-CV-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020) .............................. *passim*

*Glen v. Club Mediterranee, S.A.*,
   450 F.3d 1251 (11th Cir. 2006) ..........................................................................5, 10

*Glen v. Trip Advisor LLC*,
   No. 19-cv-1809-LPS, 2021 WL 1200577 (D. Del. Mar. 30, 2021) ...................23, 24

*Golan v. FreeEats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) .............................................................................26, 28

*Gonzalez v. Amazon.com, Inc.*,
   835 Fed. Appx. 1011 (11th Cir. Feb. 11, 2021) ...............................................23, 25

*Havana Docks Corp. v. Carnival Corp.*,
   No. 19-cv-21724, 2019 WL 8895241 (S.D. Fla. Aug. 28, 2019) .........................20

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*,
   No. 20-cv-21630, 2021 WL 1648222 (S.D. Fla. Apr. 27, 2021) ..........................23

*Iglesias v. Ricard*,
   No. 20-CV-20157, 2020 U.S. Dist. LEXIS 164117 (S.D. Fla. Aug. 17, 2020) ......................22

i

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*,
    773 F.3d 243 (11th Cir. 2014) ...................................................................................9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).....................................................................................................4

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011) ...............................................................................13

*Marsh v. Butler Cty.*,
    268 F.3d 1014 (11th Cir. 2001) (en banc) ...........................................................21

*Maxcess, Inc. v. Lucent Tech., Inc.*,
    433 F.3d 1337 (11th Cir. 2005) ...............................................................................15

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) (en banc) .............................................7, 8, 11, 12

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018).............................................................................................27

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).............................................................................7, 8, 11, 12

*State Farm Mut. Auto Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).............................................................................................26, 28

*Swann v. Sec'y Ga.*,
    668 F.3d 1285 (11th Cir. 2012) ...........................................................................9, 10

*Tarr v. Burger King Corp.*,
    No. 17-cv-23776, 2018 WL 318477 (S.D. Fla. Jan. 5, 2018)..................................7

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020)...............................................................................8, 11, 12

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*,
    525 F.3d 1107 (11th Cir. 2008) ...............................................................................20

*Tsao v. Captiva MVP Restaurant Partners, LLC*,
    986 F.3d 1332 (11th Cir. 2021) ...............................................................................20

*Wehunt v. Ledbetter*,
    875 F.2d 1558 (11th Cir. 1989) ...............................................................................10

**Statutes**

22 U.S.C. § 6021, *et seq*.................................................................................................1

22 U.S.C. § 6022(2) ............................................................................................2

22 U.S.C. § 6023(13) ................................................................................. *passim*

22 U.S.C. § 6023(15) ..........................................................................................25

22 U.S.C. § 6081(5) ............................................................................................2

22 U.S.C. § 6081(11) ..........................................................................................26

22 U.S.C. § 6082 ................................................................................................20

22 U.S.C. § 6082(a)(1)(A) ......................................................................... *passim*

22 U.S.C. § 6082(a)(4)(B) ............................................................................23, 24

22 U.S.C. § 6082(h)(1)(B) ..................................................................................27

22 U.S.C. § 6085(c)(1)(B) ....................................................................................3

**Other Authorities**

Due Process Clause of the Fourteenth Amendment ............................................26

Federal Rule of Civil Procedure 8 ......................................................................13

Federal Rule of Civil Procedure 12(b)(1) ........................................................1, 4

Federal Rule of Civil Procedure 12(b)(6) ..................................................1, 13, 21

Phil Peters, Cuba Research Ctr. (Dec. 13, 2018), *available at*
    https://www.cubastandard.com/analysis-activating-title-iii-of-helms-burton/ ......................28

Defendants Crowley Holdings, Inc., Crowley Maritime Corporation, Crowley Liner Services, Inc., Crowley Latin America Services, LLC, and Crowley Logistics, Inc. (collectively "Crowley" or "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), move this Court for an order dismissing the Second Amended Complaint (hereinafter the "Complaint") in its entirety, with prejudice.

## INTRODUCTION

The Plaintiffs in this case seek "in excess of $1 billion" (ECF No. 1-1) from Crowley because it allegedly "called" at a container terminal in the Port of Mariel in Cuba over which Plaintiffs allege they hold a "claim" under Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, 22 U.S.C. § 6021, *et seq.* (the "Act" or the "Helms-Burton Act"). Title III creates a potential cause of action for U.S. nationals against any person, corporation, or foreign government that "traffics" in property previously belonging to a U.S. national that was confiscated by the Cuban government in the 1960s. Plaintiffs make these claims notwithstanding the fact that much of the property in which the Plaintiffs allege Crowley "traffics" did not exist until nearly fifty years after the property was allegedly confiscated, and notwithstanding the fact that Crowley has consistently been expressly authorized by the U.S. government to ship goods to Cuba. Crowley has not violated Title III, and the Complaint should be dismissed for four reasons.

*First*, the Plaintiffs do not have Article III standing and, consequently, this Court lacks subject matter jurisdiction over their claim. Even assuming the allegations in the Complaint showed that Crowley has violated the Helms-Burton Act (which they do not), the Plaintiffs must still show that they have been injured in some concrete way by Crowley's conduct, rather than the unilateral acts of the Cuban government. Because they cannot, they have not suffered any injury-in-fact fairly traceable to Crowley sufficient to support Article III standing.

*Second*, the Complaint fails to state a claim.  Not only do the Plaintiffs not own a "claim" to the property they allege Crowley uses when it calls at the Port of Mariel (because much of that property did not exist until nearly fifty years after the Plaintiffs' property was allegedly confiscated), but, even if they did, the allegations fall short of demonstrating that Crowley's conduct falls within any of the definitions of "traffics" under the Act.  Moreover, fundamentally, Plaintiffs have failed to show that they had any right to the property they allege was confiscated at the time they allege it was confiscated from them.

*Third*, none of the Plaintiffs are eligible to sue under Title III of the Helms-Burton Act. The Complaint does not demonstrate that any of these Plaintiffs own a claim to the property in which they allege Crowley "traffics."  Moreover, under Title III, a plaintiff must have acquired its "claim" to the property at issue before March 12, 1996.  A plaintiff must also be either a U.S. citizen or an entity which is organized under the laws of the U.S. and has its principal place of business in the U.S.  Plaintiffs do not meet those threshold criteria.

*Fourth*, Title III is facially unconstitutional because its liability provisions are vague, and its remedy provisions are oppressive, arbitrary, and grossly disproportionate to the conduct Title III purports to curtail.

Accordingly, the Complaint should be dismissed in its entirety, with prejudice.

## FACTUAL BACKGROUND

In 1996, Congress enacted the Helms-Burton Act primarily to codify and expand economic sanctions against Cuba.  *See* 22 U.S.C. § 6022(2).  Title III of that Act was designed to deter U.S. and foreign companies from doing business with Cuba and thereby supporting the Cuban socialist regime.  *See* 22 U.S.C. § 6081(5).  In furtherance of that goal, Title III provides a private right of action that allows a U.S. national who owns a claim to property that was confiscated by the Cuban

2

government to sue any person who "traffics" in that property.  22 U.S.C. § 6082(a)(1)(A).  The Act, however, defines "traffics" broadly, including both direct and indirect uses of confiscated property.  *See* 22 U.S.C. § 6023(13)(A).

From its inception, Title III was severely criticized.  To that end, Congress gave the President the authority to suspend Title III at six-month intervals if "such suspension is necessary to the national interests of the United States and will expedite a transition to democracy in Cuba."  22 U.S.C. § 6085(c)(1)(B).  Accordingly, between the Act's passage in 1996 and May 2, 2019, every single President, including Presidents Clinton, Bush, Obama, and Trump, suspended Title III, leaving it ineffectual.  But then, on May 2, 2019, the Trump Administration let the suspension lapse, which allowed Title III to become fully effective for the first time.  *See* Compl. ¶ 69.

In their Complaint, Plaintiffs allege that in 1960, the Cuban government issued and published a confiscation order that confiscated several companies owned by Odette Blanco de Fernandez and her siblings.[1]  Compl. ¶ 2.  Those companies allegedly owned a 70-Year concession that allowed one of their companies (Maritima Mariel SA) to "plan, study, execute, maintain, and exploit public docks and warehouses in the Bay of Mariel Bay, province of Pinar del Rio Province, and the construction of new buildings and works, without prejudice to the rights acquired by third persons or entities under previous concessions still in force[,]" Compl. ¶ 89 (hereinafter, the "70-Year Concession"); and approximately 11,000 acres of land near the Port of Mariel (the "11,000 acres") (collectively, the "Confiscated Property").  *Id.* ¶ 94.

Plaintiffs also allege that in 2009—nearly fifty years after their property was confiscated—the Cuban government created the Zona Especial De Desarollo Mariel ("ZEDM"), and the

---

[1] Each of Ms. Blanco de Fernandez's siblings have died; thus seventeen plaintiffs seek to bring claims on behalf of her siblings' estates and in their personal capacities as estate beneficiaries of Ms. Blanco de Fernandez's siblings' purported claims to the Confiscated Property.

Terminal de Contenedores del Mariel ("TCM" or the "Container Terminal") which redeveloped the Port of Mariel and "incorporated" the Confiscated Property into the ZEDM.  Compl. ¶ 32; *Id.* § III.  The Complaint goes on to allege that the TCM is operated by Almacenes Universales S.A. ("AUSA"), a Cuban-owned comprehensive logistics operator.  *Id.* ¶ 42.  Notwithstanding the fact that Plaintiffs never had any property interest in the ZEDM's container terminal—indeed, that terminal did not even exist until nearly fifty years after the Cuban government confiscated the property—Plaintiffs allege that Crowley "traffics" in their Confiscated Property because it allegedly calls at, and uses, the container terminal in the ZEDM.  *Id.* ¶ 113.

## ARGUMENT

### I.    PLAINTIFFS LACK ARTICLE III STANDING

Pursuant to Rule 12(b)(1), Plaintiffs lack Article III standing because they have not suffered a concrete and particularized injury that is fairly traceable to Crowley's alleged conduct. The Complaint should therefore be dismissed in its entirety for lack of subject matter jurisdiction.

A plaintiff's standing to sue is an "irreducible" element of the Constitution's requirement that Article III courts are vested with the limited power of deciding only "cases" or "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  If a plaintiff cannot meet its burden to demonstrate Article III standing, a federal court does not have subject matter jurisdiction, and it must dismiss the case.  *Id.* at 561.  To demonstrate standing, a plaintiff must be able show: (1) an "'injury in fact'—an invasion of a legally protected interest" that is concrete and particularized, and  actual  or  imminent,  not  conjectural  or  hypothetical;  (2)  that  is  fairly  traceable  to  the defendant's conduct; and (3) that would be "redressed by a favorable decision." *Id.* at 560-61.

Here, the Plaintiffs have not suffered an injury in fact that is fairly traceable to Crowley's alleged conduct for at least three reasons.  First, even taking all of the allegations in the Complaint

as true, Plaintiffs do not allege that they ever had a legally protected interest in excluding or controlling Crowley's alleged use of the Port of Mariel.  Second, even if they ever had such an interest, they have not suffered any concrete or particularized injury as a result of Crowley's alleged "trafficking" over sixty years after that interest was extinguished by the Cuban government.  And third, any injury the Plaintiffs may have suffered is not fairly traceable to Crowley.

## A. Plaintiffs Do Not Have, and Have Never Had, a Legally Protected Interest in Excluding or Controlling Crowley's Calling at the ZEDM Container Terminal

The allegations in the Complaint do not show that Plaintiffs have a legally protected interest in excluding, restricting, or otherwise conditioning Crowley's alleged use of the container terminal in the ZEDM.[2]  The Plaintiffs have never owned, or had control over, the container terminal in which they allege Crowley "traffics."  And, as explained in more detail in Sections I(c) II, and III(a), *infra*, the Complaint contains no plausible allegations that Crowley "traffics" in the expropriated companies or 11,000 acres of land.

Plaintiffs' allegations focus on Crowley's alleged trafficking in the container terminal in the ZEDM. *See, e.g.* Compl. ¶ 114 ("When at the Port of Mariel, the container ships call at, and/or otherwise use, benefit, and profit from the Container Terminal in the ZEDM including the ZEDM's ports, docks, warehouses, and facilities.").  But the Plaintiffs only allege that they have a "claim" to the 70-Year Concession which references "ports, docks, warehouses, and facilities[,]" *not* the container terminal that now exists in the ZEDM. *Id.* ¶¶ 89, 114.  Even if Plaintiffs have a claim

---

[2] As an initial matter, Plaintiffs do not allege (nor could they) that they currently own, or otherwise have any interest in any property at the Port of Mariel.  To the extent they ever did, their interests were extinguished when the Cuban government expropriated the Confiscated Property.  *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (finding that the Cuban government's confiscation of the property at issue extinguished the ownership rights of those from whom the property was taken).

to the 70-Year Concession they allege was confiscated, that concession grants no rights whatsoever in the container terminal in which Plaintiffs allege Crowley "traffics."

Moreover, the plain terms of the Concession reveal that the Plaintiffs' rights to "plan, study, execute, maintain, and exploit [the] public docks and warehouses in the Bay of Mariel" were "*without prejudice* to the rights acquired by third persons or entities under previous concessions still in force[.]"  Compl. ¶ 89 (emphasis added).  By its explicit terms, then, the 70-Year Concession never gave Plaintiffs the <u>exclusive</u> right to determine who may use the public docks and warehouses in the Port of Mariel.[3]  Thus, while the Complaint states that Crowley never received permission from the Plaintiffs to dock and unload goods at the container terminal, it does not raise a plausible inference that Crowley ever would have needed the Plaintiffs' permission in the first place—even if the Cuban government had not confiscated the 70-Year Concession.  If Crowley never would have needed the Plaintiffs' permission to conduct any of the activities alleged in the Complaint, it cannot possibly have invaded Plaintiffs' purported legally protected interest sixty years later.

**B.  Plaintiffs Have Not Been Harmed by Crowley's Alleged "Trafficking" and, Therefore, Have Not Suffered an Injury in Fact**

Even if the Plaintiffs have a statutory right under the Helms-Burton Act in being free from

---

[3] While Plaintiffs assert that, "[w]hen the 70-Year Concession was granted to Maritima Mariel, there were no previous concessions in force," (Compl. ¶ 89), just two paragraphs later, Plaintiffs undermine that very assertion by alluding that there *were*, in fact, previous concessions still in force.  *Id.* ¶ 91 (stating that the 70-year Concession gave Plaintiffs priority rights over any other concession rights in the Bay of Mariel, "*including any such rights acquired by third persons or entities under previous concessions still in force at the time the 70-year Concession was granted to Maritima Mariel*" (emphasis added)).  Notwithstanding the internal inconsistency of Plaintiffs' allegations, if there were previous concessions still in force, the Plaintiffs do not explain how their rights were exceptional or even what "exceptional" means in this context.  Indeed, the plain language of the 70-Year Concession says exactly the opposite—that the Plaintiffs' rights under it *are not* superior "to the rights acquired by third persons or entities under previous concessions still in force[.]"  *Id.* ¶ 89.

third parties "trafficking" in confiscated property to which they have a claim, the violation of that statutory right, on its own, is not enough to assert Article III standing.  Instead, even if Crowley "trafficked" in confiscated property to which the Plaintiffs have a claim (which it did not), the Plaintiffs must still demonstrate that Crowley's alleged "trafficking" has *harmed* them in some concrete way in order to show Article III standing.  Plaintiffs have failed to do so.

Article III standing requires more than a defendant's mere statutory violation.  Whether or not the defendant has violated a statute, the plaintiff must *actually* suffer an injury as a result of the defendant's invasion of a legally protected interest held by the plaintiff.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").  While Congress may use its legislative power to identify harms and grant rights of action to recover for them, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who *would not otherwise* have standing."  *Id.* at 1547-48 (emphasis added).  Accordingly, to demonstrate standing, a plaintiff must show some injury beyond the violation of rights afforded to them by a statute in order to demonstrate an injury in fact—that is, the injury must be *independent from* a defendant's mere statutory violation.  *Spokeo*, 136 S. Ct. at 1549; *see Tarr v. Burger King Corp.*, No. 17-cv-23776, 2018 WL 318477, *7 (S.D. Fla. Jan. 5, 2018) ("Congress's judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury." (citation omitted)).  Indeed, as the Eleventh Circuit recently explained, "a party does not have standing to sue when it pleads only the bare violation of a statute."  *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 920 (11th Cir. 2020) (en banc).  Rather, "an injury in fact [must] *accompan[y]* a statutory violation."  *Id.* at 930 (emphasis added).  Thus, it is well-settled that the mere violation of a right conferred by statute is insufficient, on its own, to demonstrate an injury

7

for purposes of Article III standing.  *See Spokeo*, 136 S. Ct. at 1549; *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619-21 (2020) (holding that even if the defendants had violated the Employee Retirement Income Security Act—which granted the plaintiffs a private right of action—the fact that the defendants' conduct did not, in fact, harm the plaintiffs left them without standing to sue); *Muransky*, 979 F.3d at 920-21; *Glen v. Am. Airlines, Inc.*, No. 4:20-CV-482-A, 2020 WL 4464665, *2 (N.D. Tex. Aug. 3, 2020).  Yet, a mere statutory violation is all Plaintiffs have alleged.

Taking the allegations as true, Plaintiffs are in the same position today as they were before Crowley ever began shipping goods to Cuba.  In fact, they are in the same position today as they were on September 29, 1960, when the Cuban government confiscated their property.  Nothing Crowley has done has affected the likelihood that the Plaintiffs will be compensated by the Cuban government for the Confiscated Property; nothing Crowley has done has affected the likelihood that the Cuban government will return the Confiscated Property; and nothing Crowley has done has affected Plaintiffs' ability to control the Confiscated Property or who uses it.  Indeed, nothing Crowley has done has *harmed* the Plaintiffs.  Therefore, whether or not Crowley violated the Helms-Burton Act, Plaintiffs have not demonstrated that Crowley's conduct injured them in any way that would support Article III standing.

*Glen* is instructive on this point.  There, the plaintiff alleged that the defendant had violated the Helms-Burton Act by taking commissions on its customers' reservations at hotels that are located on property that was confiscated from the plaintiff's mother and aunt.  *Glen*, 2020 WL 4464665, at *2.  The court dismissed the plaintiff's suit after finding that the plaintiff had not suffered a concrete injury.  *Id.*  Just like the Plaintiffs here, the *Glen* plaintiff's theory of injury was "based entirely on defendant's alleged violation of the substantive rights given to plaintiff by the [Helms-Burton] Act."  *Id.*  But, relying on *Spokeo*, the court correctly held that the plaintiff

had not been injured in any concrete way regardless of whether the defendant had violated the Helms-Burton Act. *Id.*  As the court explained, "Plaintiff complains that defendant fails to compensate plaintiff when defendant earns commissions on reservations made at the Subject Hotels.  It is unclear how plaintiff is injured by such an action.  Defendant did not deprive plaintiff of the Properties or the profits he might make if he owned and operated hotels on the Properties. Instead, defendant merely does business with the Subject Hotels." *Id.*  (internal citation omitted).

The same is true here.  The Plaintiffs allege that Crowley "traffics" in the Confiscated Property without their permission and without compensating them.  But just as in *Glen*, Crowley "did not deprive plaintiff[s] of the [Confiscated Property] or the profits [they] might make if [they] owned and operated" the container terminal.  *Id.*  Accordingly, even if Plaintiffs can prove that Crowley has violated the Helms-Burton Act (which they cannot), they have not suffered any concrete injury and, therefore, do not have Article III standing.

### C.  Any Purported Injury Is Not Fairly Traceable to Crowley's Alleged Conduct

To the extent the Plaintiffs have suffered any injury at all, their injury is not "fairly traceable to Crowley's alleged "trafficking."  To satisfy the "fairly traceable" nexus requirement of the standing analysis, Plaintiffs must demonstrate that their alleged injury is "fairly traceable to the challenged action of the defendant."  *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243, 247 (11th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560).  The injury must "not [be] the result of the independent action of some third party not before the court." *Id.* (quoting *Lujan*, 504 U.S. at 560).  Plaintiffs, therefore, do not have standing when an "independent source," rather than Crowley, is responsible for their injuries.  *Swann v. Sec'y Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012).

Plaintiffs, here, all but admit that their alleged injury is not traceable to Crowley's alleged

violation of the Act.  First, while Plaintiffs allege that Crowley calls at the container terminal in the ZEDM and, therefore, that Crowley "traffics" in the 70-Year Concession, Plaintiffs' only allegations that Crowley "traffics" in the land that they claim was confiscated depends *entirely* on a non-party's decision to allegedly store containers that are offloaded from Crowley ships in the container storage yard in the ZEDM.  *See* Compl. ¶ 114.  Second, and more broadly, the damages Plaintiffs seek have no relationship to Crowley's trafficking.  Plaintiffs do not seek, for example, the amount of fees they argue they would have been able to charge Crowley for its alleged use of the Port of Mariel.  Rather, the damages they seek are solely tied to the value of the Confiscated Property itself, which reveals that any injury the Plaintiffs have suffered is traceable to the actions of the Cuban government, not to Crowley's alleged "trafficking."  Compl. ¶ 167.  But Crowley may not be held liable for the actions of the Cuban government nor of third parties not before this Court. Because Plaintiffs' injuries were "directly caused by a third party who is not a party to the lawsuit," *Wehunt v. Ledbetter*, 875 F.2d 1558, 1567 (11th Cir. 1989), and because those injuries occurred long before, and "regardless of," Crowley's conduct, the Plaintiffs cannot show that any injuries they have suffered are traceable to Crowley's alleged "trafficking."  *Swann*, 668 F.3d at 1289.

*     *     *

In an attempt to manufacture standing, Plaintiffs allege they have been injured in nine ways.  *See* Compl. ¶ 144.  However, none of the purported "injuries" supports Article III Standing. Crowley offers the following chart negating each of Plaintiffs' attempts:

| Plaintiffs' Allegation(s) | Crowley's Response |
|---|---|
| "Defendants are profiting without obtaining consent from or paying adequate compensation to Plaintiffs[.]"  Compl. ¶ 144(a).<br><br>"Defendants are profiting without obtaining authorization or paying adequate | Plaintiffs are not injured by Crowley's failure to compensate them or obtain their consent or authorization.  ***First***, Crowley does not need to compensate the Plaintiffs or obtain their consent or authorization to call at the TCM Container Terminal because the Plaintiffs do not have any property rights in the container terminal.  *See Glen*, 450 F.3d at |

10

| | |
|---|---|
| compensation to Plaintiffs for authorization to traffic in the confiscated property[.]" Compl. ¶ 144(c).<br><br>"Defendants are profiting or otherwise benefiting from trafficking in the Confiscated Property by or through others without obtaining authorization from, or paying adequate compensation to, Plaintiffs[.]" Compl. ¶ 144(d). | 1255. *Second*, as explained, Plaintiffs have not demonstrated that Crowley would have needed their consent or authorization even if their property had not been confiscated. *Third*, to the extent Plaintiffs argue that the Helms-Burton Act is what requires Crowley to obtain their consent or authorization, Crowley's alleged failure to do so is not an Article III injury. It is, at most, a statutory violation and Article III standing requires more than a mere statutory violation—it requires the Plaintiffs to suffer a concrete injury *independent from* the violation of their statutory rights. *See Spokeo*, 136 S. Ct. at 1547-48. |
| "Plaintiffs are not receiving the benefit of their interests in the Confiscated Property[.]" Compl. ¶ 144(b). | Plaintiffs do not have any "*interests*" in the Confiscated Property—at best they have an uncertified claim to it. Plaintiffs were deprived of any "interest" in the Confiscated Property when the Cuban government confiscated it, not as a result of Crowley's alleged "trafficking." |
| "Defendants' trafficking in the Confiscated Property has undermined Plaintiffs' rights to compensation for the Confiscated Property[.]" Compl. ¶ 144(e). | Plaintiffs were left uncompensated for the Confiscated Property for over *fifty years* before Crowley allegedly began "trafficking" in it. The notion that Crowley's alleged trafficking for the past seven years has somehow made it less likely that the Cuban government will compensate Plaintiffs for their losses is unsupported by any plausible allegation in the Complaint. Plaintiffs are just as entitled to compensation from the Cuban government today as they were in 1960 when the Confiscated Property was purportedly taken. |
| "Defendants have profited from their use of the Confiscated Property at Plaintiffs' expense[.]" Compl. ¶ 144(f). | Nothing in the Complaint supports this bald allegation. Crowley's alleged trafficking has had no financial impact on the Plaintiffs. |
| "Defendants have denied Plaintiffs the ability to obtain economic rent that could have been negotiated in exchange for their authorization to Defendants to traffic in the Confiscated Property[.]" Compl. ¶ 144(g). | Plaintiffs have not alleged they would have been able to collect "economic rent" for Crowley's alleged trafficking even if the Cuban government had not confiscated their property. Regardless, Crowley's "alleged violation of the substantive rights given to [Plaintiffs] by the [Helms-Burton] Act" is, at most, a violation of their statutory rights, not a theory of injury that can support Article III standing. *Glen*, 2020 WL 4464665, at *2; *see Spokeo*, 136 S. Ct. 1547-48; *Thole*, 140 S. Ct. at 1620-21; *Muransky*, 979 F.3d at 920-21. |
| "Defendants have appropriated from the Plaintiffs the leverage from the Helms- | Plaintiffs went uncompensated by the Cuban government for 36 years after Cuba confiscated the |

| | |
|---|---|
| Burton Act that Plaintiffs would have had on the Cuban Government to negotiate compensation for their Confiscated Property." Compl. ¶ 144(h). | Confiscated Property and *before* the Helms-Burton Act was passed. Then, even *after* the Helms-Burton Act was passed—giving Plaintiffs the purported leverage of which they now speciously complain Crowley has deprived them—they *still* went uncompensated by the Cuban government for an additional 18 years before Crowley allegedly began "trafficking" in the Confiscated Property. Crowley's alleged "trafficking" has had no impact on Plaintiffs' leverage with the Cuban government, and Plaintiffs do not explain what leverage they would have if Crowley had not allegedly "trafficked" in the Confiscated Property. Regardless, the deprivation of "leverage" that was created by a statute is not an injury that can support Article III standing. *See Spokeo*, 136 S. Ct. 1547-48; *Thole*, 140 S. Ct. at 1620-21; *Muransky*, 979 F.3d at 920-21; *Glen*, 2020 WL 4464665, at *2. |
| "Defendants have injured Plaintiffs by trafficking in the Confiscated Property without Plaintiffs' authorization and without making any payment of compensation to Plaintiffs because in the Helms-Burton Act, Congress provided the rightful owners of confiscated property with the right to be compensated from defendants who have economically exploited the confiscated property." Compl. ¶ 144(i). | This is an inaccurate overstatement of the rights conferred under the Helms-Burton Act. At most, the Act recognizes a right of a limited subset of claimholders, who meet specific criteria, to be free from third parties trafficking in their confiscated property. It is simply inaccurate to characterize the Helms-Burton Act as conferring a right on any and all claimholders to compensation for any and all "economic[] exploit[ation]" of confiscated property. Regardless, though, even if the Helms-Burton Act renders certain traffickers liable to certain original owners of confiscated property, that does not mean that *all* of those original owners are injured *any time* a third party "traffics" in their confiscated property. *Glen*, 2020 WL 4464665, at *2. Thus, the mere fact that Plaintiffs have not been compensated is not, on its own, a cognizable Article III injury. |

Notwithstanding the above, it is clear that Plaintiffs' sole <u>theory</u> of injury is that Crowley has violated the Helms-Burton Act and the rights the Act purports to grant them. As binding case law from both the Supreme Court and the Eleventh Circuit make clear, however, that is not enough: "an injury in fact [must] accompan[y] a statutory violation[]" in order to support Article III standing. *Muransky*, 979 F.3d at 920-21, 930; *Spokeo*, 136 S. Ct. 1547-48; *Thole*, 140 S. Ct. at

12

1620-21; *see also*; *Glen*, 2020 WL 4464665, at *2.  Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' claim.

## II.  THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT ADEQUATELY ALLEGE THAT CROWLEY HAS TRAFFICKED IN ANY CONFISCATED PROPERTY

The Complaint should also be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim.  Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[N]aked assertions devoid of further factual enhancement" do not suffice.  *Id.*  And while courts must accept a plaintiff's allegations as true when ruling on a motion to dismiss, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth."  *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

While the Complaint summarily concludes that Crowley is "trafficking" in Plaintiffs' Confiscated Property, the Plaintiffs' allegations do not, as a matter of law, rise to "trafficking" as that term is defined under the Helms-Burton Act.  Plaintiffs allege that the Cuban government confiscated, from Ms. Blanco de Fernandez and her siblings, several companies that owned approximately 11,000 acres of land and a 70-Year Concession.  Compl. ¶¶ 87-103.  The Complaint then alleges that the Cuban government "incorporated" that property into the ZEDM, and that Crowley "traffics" in it by calling at the container terminal.   Compl. ¶¶ 106, 104-12, 114.[4]

---

[4] Aside from alleging that the Plaintiffs' confiscated land now sits within the ZEDM (Compl. ¶ 109), Plaintiffs do not explain how any of the Confiscated Property was "incorporated" into the ZEDM.

Plaintiffs ultimately allege that Crowley "traffics" in the Confiscated Property because its container ships "call at, and/or otherwise use, benefit, and profit from the Container Terminal in the ZEDM including the ZEDM's ports, docks warehouses, and facilities." *Id.* ¶ 114. And that Crowley, "engage[s] in commercial activities using or otherwise benefitting from the Plaintiffs' Confiscated Property and acts of trafficking by the Container Terminal, AUSA and the ZEDM which make Crowley's container business at the Port of Mariel possible and profitable." *Id.*

Even if those allegations are true, they do not state a claim for "trafficking" for three reasons. First, the Plaintiffs do not own a claim to the container terminal in which they allege Crowley "traffics" which is a prerequisite to stating a claim under Title III of the Helms-Burton Act. Second, the allegations of "trafficking" in the 70-Year Concession and the confiscated companies do not satisfy the definition of "traffics" under the Act. And third, the Complaint demonstrates that the lawful travel clause bars Plaintiffs' claims.

### A. Plaintiffs Do Not Own a Claim to the Container Terminal or the 70-Year Concession in Which They Allege Crowley "Traffics"

Under the plain language of the Helms-Burton Act, Plaintiffs have failed to state a claim. Under the Act, "any person that . . . traffics in property that was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to *such property*." 22 U.S.C. § 6082(a)(1)(A) (emphasis added). Thus, a defendant may only be held liable for "trafficking" by a plaintiff who "owns the claim" to the specific property in which the defendant "trafficked." *Id.*

Here, however, the Plaintiffs do not own a claim to the container terminal in which they allege Crowley "traffics." First, even if Plaintiffs own a claim to the 70-Year Concession that was allegedly confiscated from them, there are no allegations that Crowley "traffics" in the 70-Year Concession. Rather, the Complaint states that Crowley "call[s] at, and/or otherwise use[s],

benefit[s], and profit[s] from the Container Terminal in the ZEDM including the ZEDM's ports, docks, warehouses, and facilities."  Compl. ¶ 114.  But Plaintiffs do not own a claim to the container terminal or the "ZEDM's ports, docks, warehouses, and facilities."  Indeed, none of that property was ever owned by, or confiscated from, the Plaintiffs—it is property that did not even exist until nearly fifty years after the Plaintiffs' property was allegedly confiscated.  Compl. ¶ 107.  Accordingly, because Plaintiffs do not own a claim to the container terminal in which they allege Crowley "traffics," they fail to state a claim under the Helms-Burton Act.[5]

Second, documents referenced in the Complaint indicate that Ms. Blanco de Fernandez and her siblings did not own or have any other interest in the 70-Year Concession at the time their property was confiscated.[6]  While Plaintiffs allege that the Confiscation Order "expressly

---

[5] For these same reasons, Plaintiffs have failed to adequately allege the "knowingly and intentionally" element of a trafficking claim.  *See* 22 U.S.C. § 6023(13)(A).  Specifically, to "commit trafficking under the Act, a person must know that the property was confiscated by the Cuban government and intend that such property be the subject of their commercial behavior."  *Glen*, 2020 WL 4464665, at *6.  As explained above, Crowley could not possibly have intended that any Confiscated Property "be the subject of [its] commercial behavior" because none of the Confiscated Property *was* the subject of its alleged commercial behavior.  *Id.*  Indeed, all of Plaintiffs' "knowingly and intentionally" allegations involve Crowley sending ships to call at the Container Terminal at the Port of Mariel—something that did not exist until nearly fifty years after Plaintiffs' property was allegedly confiscated.  *See* Compl. ¶¶ 38, 113, 149.

[6] Certified translations of the entire 70-Year Concession and Confiscation Order were recently filed by defendants in two other cases brought by the same Plaintiffs here and are attached as Exhibits 1 and 2 herein.  *See De Fernandez v. Seaboard Marine, LTD.*, No. 1:20-cv-25176-Bloom/Otazo-Reyes, ECF No. 63-1 (Exhibit A: 70-Year Concession and certified translation thereof), ECF No. 63-2 (Exhibit B: confiscation order and certified translation thereof) (S.D. Fla. May 11, 2021); *De Fernandez v. A.P. Moller Maersk A.S*, No. 2:21-cv-339 (E.D. La. July 6, 2021) (attaching same documents as Exhibits A and B to Motion to Dismiss, ECF Nos. 26-2, 26-3).  The fact that Plaintiffs did not attach to the Complaint either the 70-Year Concession or the Confiscation Order, or the translations of those documents from which they quote, is inexplicable given their importance to this case.  Nonetheless, the Court may consider them because they are central to the Plaintiffs' claims and their authenticity is undisputed—indeed, Plaintiffs purport to quote from translations of the concession and the confiscation order throughout the Complaint and all of their claims are premised on those documents.  *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

nam[ed]" the 70-Year Concession (Compl. ¶ 98), that is not the case; the Concession is *not* expressly named in the section that details the property being confiscated.  *See* Exhibit 2 at 1-4. The omission of the Concession from the Confiscation Order makes eminent sense because, as Plaintiffs conveniently omit from the Complaint, the 70-Year Concession contained several conditions which, if not satisfied, resulted in the complete forfeiture of the Concession.  *See* Exhibit 1 at 5-6 (such as the failure to: (1) within 18 months of the publication of the concession, begin constructing a new terminal, draining, dredging, and filling in parts of the bay, and realizing the machinery, devices, instruments, buildings, and equipment necessary to achieve those requirements; (2) within four years of the publication of the concession, complete those tasks; or (3) within one year of the publication of the concession, reach a financing agreement with the Cuban government).  The Complaint contains no allegations that any of those conditions were satisfied and, therefore, fails to demonstrate that the Plaintiffs had any rights under the 70-Year Concession at the time they allege it was confiscated from them.

### B. The Allegations Do Not Raise a Plausible Inference that Crowley's Alleged Conduct Constitutes "Trafficking"

Even if the allegations in the Complaint are true, Plaintiffs have not adequately pled that Crowley "traffics" in any confiscated property, as that term is defined under the Helms-Burton Act.  A person "traffics" in confiscated property under the Helms-Burton Act if that person knowingly and intentionally:

> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
> (ii) engages in a commercial activity using or otherwise benefitting from confiscated property, or
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13)(A).  Plaintiffs do not allege, because they cannot, that Crowley is "trafficking" in any confiscated property under subsection (i).  Thus, the only question is whether Plaintiffs sufficiently allege that Crowley "traffics" in confiscated property as defined in subsections (ii) or (iii).  They have not.

The Complaint does not raise an inference that Crowley's conduct meets the definition of "traffics" under subsection (ii) because it does not plausibly allege that Crowley, "engages in a commercial activity using or otherwise benefitting from" the 70-Year Concession or any of the other Confiscated Property.  22 U.S.C. § 6023(13)(A)(ii).  With respect to the 70-Year Concession, the Complaint does not allege that Crowley "uses" or "benefits from" any of the rights enumerated in the concession because it does not allege that Crowley, "plan[s], stud[ies], execute[s], maintain[s], [or] exploit[s] [the] public docks and warehouses in the Bay of Mariel."  Compl. ¶ 89. Indeed, Plaintiffs could not possibly make such an allegation because, as they admit, the "public docks and warehouses" referenced in the 70-Year Concession no longer exist.  *See* Comp. ¶ 107. Nor does the Complaint allege that Crowley has constructed any "new buildings or works" in the Bay of Mariel (another right purportedly granted by the 70-Year Concession).  Compl. ¶ 89.  While the Complaint alleges that Crowley calls at, and uses, the container terminal in the ZEDM, it does not allege—at least not with any specificity—that Crowley "uses" or "benefits from" any of the companies or the approximately 11,000 acres of land that were confiscated from the Plaintiffs.  To be sure, the Complaint states that the confiscated land "cover[s] virtually every square meter of ZEDM sector A5, which the ZEDM operates as a logistics zone" (Compl. ¶ 109) and that Crowley containers are stored in a storage yard operated by the AUSA after they are offloaded from Crowley ships.  Compl. ¶ 114.  But the fact that the AUSA decides to store containers that were offloaded from Crowley ships on land that was allegedly confiscated from the Plaintiffs does not

17

mean that Crowley "uses" or "benefits from" that land; it cannot possibly be the case that Crowley "traffics" in every piece of property its containers touch from the moment they are offloaded in Cuba.  Finally, the Complaint states that the Plaintiffs' confiscated property was "incorporated" into the ZEDM.  Compl. ¶ 106.  This bald assertion—which fails to explain how such property was or could be incorporated into an economic zone like the ZEDM—is not enough to raise an inference that Crowley "uses" or "benefits from" the Confiscated Property (indeed, the Complaint leaves it to the imagination how Crowley could possibly "use" or "benefit from" confiscated companies or property that have not existed for over sixty years).  *Iqbal*, 556 U.S. at 678 ("[N]aked assertions devoid of further factual enhancement" are insufficient to state a claim).  Accordingly, the Complaint fails to allege that Crowley "traffics" in any confiscated property under 22 U.S.C. § 6023(13)(A)(ii).

Similarly, the Complaint fails to allege that Crowley is "trafficking" in confiscated property under subsection (iii).  That subsection provides that a person "traffics" in confiscated property if that person "causes, directs, participates in, or profits from, trafficking . . . by another person, or otherwise engages in trafficking . . . through another person[.]"  22 U.S.C. § 6023(13)(A)(iii).  By alleging that Crowley "use[s], benefit[s], and profit[s] from the Container Terminal in the ZEDM[,]" (Compl. ¶ 114), Plaintiffs appear to suggest that because the ZEDM, the TCM, and AUSA are "trafficking" in the Plaintiffs' Confiscated Property, then anyone who calls at the container terminal in the ZEDM is also "trafficking" in the Confiscated Property.  But even under the exceptionally broad and vague definition of "trafficking" in 22 U.S.C. § 6023(13)(A)(iii), that is insufficient.  Neither the allegation that Crowley calls at the container terminal, nor the allegations about how Crowley's containers are offloaded and stored in the ZEDM, can properly be understood as allegations that Crowley "causes" or "directs" or "participates in" the ZEDM's,

TCM's, or AUSA's alleged "trafficking." Crowley neither caused nor directed the ZEDM, TCM, or AUSA to do anything related to Plaintiffs' purported property; calling at the port does not mean that Crowley "participates in" the ZEDM's, TCM's, or AUSA's alleged use of the Confiscated Property to develop and operate the port.

Similarly, even if Crowley uses the container terminal in the ZEDM, that does not raise an inference that Crowley "profits from" the ZEDM's, TCM's, or AUSA's alleged "trafficking." Plaintiffs broadly, and with no factual support, suggest that because Crowley's "container business at the Port of Mariel" is generally "profitable," they are therefore "profiting" from the ZEDM's, TCM's, and/or AUSA's trafficking. Compl. ¶ 114. But that cannot possibly be how Congress intended subsection (iii) to be interpreted. To be found liable for trafficking under subsection (iii) because a defendant "profits from" trafficking by another person, the defendant must actually *profit from* the third party's trafficking in the confiscated property. Here, however, Crowley is not "profiting from" the ZEDM's, TCM's, and/or AUSA's alleged use of the Confiscated Property simply because they call at the port and allegedly run a profitable business legally shipping goods to Cuba. Indeed, common sense would suggest the opposite—that Crowley *pays* the ZEDM, TCM, or AUSA to call at the container terminal, not that Crowley somehow "profits from" those entities' development of, or operation of, the port. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

### C. The Complaint Raises an Inference That Crowley's Conduct *Does Not* Constitute "Trafficking"

Not only do Plaintiffs fail to allege that Crowley "traffics" in the Confiscated Property, but the allegations make clear that Crowley's alleged conduct *does not* constitute "trafficking" because its uses of the TCM container terminal are "incident to lawful travel to Cuba[.]" 22 U.S.C. §

6023(13)(B)(iii).  Under the Helms-Burton Act, "trafficking" does not include "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel[.]"  *Id.*  But "trafficking" is an essential element of any Helms-Burton Act claim, and, therefore, to state a claim, the plaintiff must plead facts that, if true, show that the defendant's conduct falls within (and not outside of) the statutory definition of "traffics" under 22 U.S.C. § 6023(13).  *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) ("A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing the[] elements [of the claim] by alleging facts that 'plausibly' demonstrate each element.").[7]

Here, whether or not this Court finds that the "lawful travel" clause is an affirmative defense or a part of the "trafficking" element that the Plaintiffs must adequately plead, the allegations in the Complaint raise a plausible inference that Crowley's conduct *does not* constitute trafficking, rather than a plausible inference that it does.  Indeed, the Complaint acknowledges that Crowley "may claim to have one or more licenses issued by the United States Department of the Treasury Office of Foreign Assets Control for some or all of their shipments to Cuba[.]"  Compl.

---

[7] While two judges in this District have held that a Helms-Burton Act plaintiff need not plead that the defendant's alleged "trafficking" was *not* "incident to lawful travel[,]" Crowley respectfully submits that those decisions are incorrect.  *See Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1286-88 (S.D. Fla. 2020); *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2019 WL 8895241, *3 (S.D. Fla. Aug. 28, 2019).  The "lawful travel" clause is not an exception to the liability provision of the Helms-Burton Act but rather incorporated in the definition of "traffics."  *Compare* 22 U.S.C. § 6023(13) (definitional section), *with* 22 U.S.C. § 6082 (liability section).  If Congress intended for the "lawful travel" clause to create a statutory exception to liability, it would have included it in the liability provision of Title III, which separately enumerates the exceptions to liability.  22 U.S.C. § 6082.  Absent a clear expression of Congressional intent, there is no reason to flip the burden of proof to defendants to prove that the alleged "trafficking" is lawful.  *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008) ("When a statute is silent as to who bears the burden of proof, we resort to 'the ordinary default rule that plaintiffs bear the risk of failing to prove their claims.'") (quoting *Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).

¶ 145.  Plaintiffs then assert, without any support or explanation, that "any such licenses do not qualify Defendants to benefit from the lawful travel affirmative defense contained in 22 U.S.C. § 6023(13)(B)(iii)."  *Id.*  Even if the "lawful travel" clause creates an affirmative defense, if a plaintiff affirmatively raises an inference that the defendant's conduct is *lawful*, as the Complaint does here, the plaintiff must at least be required to explain, with more than a passing and unsupported legal assertion, the basis for its conclusion that the defendant's conduct is unlawful. *See Marsh v. Butler Cty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) ("A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim."), *abrogated in part on other grounds by Twombly*, 550 U.S. at 561-63.  Plaintiffs fail to do so in the Complaint.

### III.   NONE OF THE PLAINTIFFS ARE ELIGIBLE TO SUE UNDER THE HELMS-BURTON ACT

#### A.  The Complaint Fails to Raise a Plausible Inference that Any of the Plaintiffs Own a Claim to Any of the Property in Which they Allege Crowley "Traffics"

In order to bring a trafficking claim under the Helms-Burton Act, a plaintiff must "own[] the claim to" the confiscated property in which the defendant allegedly "traffics."  22 U.S.C. § 6082(a)(1)(A).  Here, Plaintiffs allege that Crowley "traffics" in the 70-Year Concession and approximately 11,000 acres of land.[8]  But none of the Plaintiffs ever owned any of that property, nor do the vast majority of them allege that they otherwise acquired a "claim" to it.

Rather, the Complaint is clear that the 70-Year Concession was granted to, and held by, Maritima Mariel SA, a company which was allegedly owned by Ms. Blanco de Fernandez and her

---

[8] The Complaint also superficially alleges that Crowley "traffics" in the confiscated companies owned by Ms. Blanco de Fernandez and her siblings but does not explain what it means to "traffic" in a company or how Crowley could possibly be "trafficking" in a company that has not existed for sixty years.

siblings.  Compl. ¶¶ 4, 89.  According to the Complaint, the 11,000 acres of land was owned by Central San Ramón and Compañia Azucarera Mariel S.A., two other companies that were allegedly owned by them.  *Id.* ¶ 4.  The Concession and 11,000 acres of land were owned by the companies in which Ms. Blanco de Fernandez and her siblings held shares, not by the siblings themselves.  Consequently, when those assets were allegedly confiscated, they could only be confiscated from the <u>companies</u>, not from the siblings or any of the other Plaintiffs here.[9]

Plaintiffs incorrectly assume that Ms. Blanco de Fernandez and her siblings must have acquired a claim to the 70-Year Concession and the 11,000 acres of land when the Cuban government confiscated those assets from the companies in which the siblings owned shares.  This Court should not credit that assumption because it is flatly contradicted by the text of the Helms-Burton Act, which requires that in order to hold a defendant liable for trafficking, the plaintiff must own a claim to the specific property in which they allege the defendant traffics.  22 U.S.C. § 6082(a)(1)(A).  Plaintiffs here fail to do so.[10]

### B. Even if the Individuals Named in the Confiscation Order Acquired Claims to the Confiscated Property, the Only Proper Plaintiff is Odette Blanco de Fernandez

Even assuming Ms. Blanco de Fernandez and her siblings acquired a claim to the property

---

[9] Indeed, the full Confiscation Order makes clear that the shares of Central San Ramon, Compañia Azucarera Mariel S.A., and Maritima Mariel SA were confiscated separate and apart from any property that was confiscated from the Blanco Rosell siblings individually.  *See* Exhibit 2 at 1-4.

[10] Crowley recognizes that two judges in this District have found that a plaintiff's allegation of "indirect" ownership of confiscated property (i.e. the allegation that the property at issue was confiscated from a corporate entity that the plaintiff owned) was sufficient to survive a motion to dismiss.  *See Garcia-Bengochea*, 407 F. Supp. 3d at 1289-90; *Iglesias v. Ricard*, No. 20-CV-20157, 2020 U.S. Dist. LEXIS 164117, *32-34 (S.D. Fla. Aug. 17, 2020).  Crowley respectfully disagrees.  The Helms-Burton Act says that only plaintiffs who "own[] the claim to" confiscated property may bring a Title III claim for trafficking.  22 U.S.C. § 6082(a)(1)(A).  The Act gives no indication that Congress intended to allow every shareholder of a <u>company</u> that owned a claim to confiscated property to sue under Title III by virtue of the shareholders' stake in the company.

owned by the companies that were allegedly confiscated, the only Plaintiff who, in theory, is eligible to bring a Helms-Burton Act suit is Odette Blanco de Fernandez. Accordingly, even if the Court finds that Ms. Blanco de Fernandez has standing and has stated a plausible claim for relief, the other seventeen Plaintiffs' claims must be dismissed for failure to state a claim.

### i. Other than Odette Blanco de Fernandez, none of the Plaintiffs acquired their claims before March 12, 1996

The Helms-Burton Act states: "In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the Confiscated Property unless such national *acquires ownership of the claim before March 12, 1996*." 22 U.S.C. § 6082(a)(4)(B) (emphasis added). As the Eleventh Circuit held in affirming this District's grant of a motion to dismiss, "The language that Congress used in this provision is clear and unambiguous." *Gonzalez v. Amazon.com, Inc.*, 835 Fed. Appx. 1011, 1012 (11th Cir. Feb. 11, 2021). Therefore, a plaintiff suing under the Helms-Burton Act must "plausibly allege that he acquired his claim to the property at issue in [the] case by March 12, 1996." *Id.*; *Glen*, 2020 WL 4464665, at *3-4 (dismissing Helms-Burton Act complaint for failure to state a claim because plaintiff had not inherited his claim prior to March 12, 1996); *Glen v. Trip Advisor LLC*, No. 19-cv-1809-LPS, 2021 WL 1200577, *7-9 (D. Del. Mar. 30, 2021) (same); *Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725-JLK, 2020 WL 4590825, *4 (S.D. Fla. July 9, 2020) (granting judgment on the pleadings because plaintiff had not inherited his claim prior to March 12, 1996). "The statute makes no distinctions with respect to the method of acquiring the claim." *Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*, No. 20-cv-21630, 2021 WL 1648222, at *5 (S.D. Fla. Apr. 27, 2021) (citing *Glen*, 2021 WL 1200577, at *7).

Here, it is clear from the face of the Complaint that none of the Plaintiffs other than Ms. Blanco de Fernandez acquired their claims before March 12, 1996. Of the seventeen Plaintiffs,

four purport to be the estates of Ms. Blanco de Fernandez's deceased siblings (the "Estate Plaintiffs"), Compl. ¶¶ 10-13, and thirteen of those siblings' descendants purport to sue in their personal capacities, each claiming that they inherited the four siblings' claims to the Confiscated Property (the "Inheritance Plaintiffs"). Compl. ¶¶ 14-26. As the Complaint alleges, however, each of Ms. Blanco de Fernandez's siblings died several years after 1996: Alfredo Blanco Rosell died on December 10, 2006 (*id*. ¶ 10); Byron Blanco Rosell died on February 25, 2001 (*id*. ¶ 11); Enrique Blanco Rosell died on November 27, 2014 (*id*. ¶ 12); and Florentino Blanco Rosell died on March 18, 2005 (*id*. ¶ 13). Thus, it is impossible that any of their descendants inherited claims to the Confiscated Property before March 12, 1996 (and the Complaint does not allege otherwise). Accordingly, the thirteen Inheritance Plaintiffs' claims must be dismissed.

The same is true with respect to the four Estate Plaintiffs. Because each of Ms. Blanco de Fernandez's four siblings died after March 12, 1996, none of their estates existed before that date, so they cannot be said to have "acquire[d] ownership of" a claim to the Confiscated Property before that date. 22 U.S.C. § 6082(a)(4)(B). In other words, to the extent the Estate Plaintiffs have a claim to the Confiscated Property, that claim vested after March 12, 1996, and, therefore, they are ineligible to sue under Title III. *Glen*, 2021 WL 1200577, at *9 (citing *Iglesias*, 2020 U.S. Dist. LEXIS 164117, at *35 n.11 (requiring plaintiff to show in amended complaint that interest was transferred or vested prior to March 12, 1996)). Accordingly, the Court must dismiss the Inheritance Plaintiffs' and the Estate Plaintiffs' claims for failure to state a claim.[11]

---

[11] Moreover, the Complaint does not allege any facts to demonstrate that any of these Plaintiffs—either the Inheritance or the Estate Plaintiffs—hold claims to the Confiscated Property at all. If any of them, in fact, hold claims to the Confiscated Property, the Complaint does not explain how they acquired them. Instead, the Complaint betrays the Plaintiffs' *own* apparent uncertainty about whether or how any of the Plaintiffs (other than Ms. Blanco de Fernandez) acquired a claim to the Confiscated Property by nakedly asserting that "[t]o the extent that [Ms. Blanco de Fernandez's siblings'] claim[s] do[] not remain with [their] Estate[s]" their descendants "inherited and own[] a

## ii.   The Estate Plaintiffs are not proper plaintiffs under the Act

Moreover, under a plain reading of the Helms-Burton Act, the four Estate Plaintiffs are ineligible to sue.  The Helms-Burton Act limits its private right of action to a "United States national," defined as "(A) any United States citizen; or (B) any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States."  22 U.S.C. § 6082(a)(1)(A); 22 U.S.C. § 6023(15).  While it is true that in some circumstances an estate or its representative may constitute a proper plaintiff, an estate is not a proper plaintiff under the Helms-Burton Act because it is neither a "United States citizen" nor a legal entity that fits the requirements set forth in 22 U.S.C. § 6023(15)(B).

In addition to the plain definition of "United States national" which makes clear that an estate is not a proper plaintiff, the Helms-Burton Act, when read as a whole, demonstrates that Congress did not intend for claims to survive forever in the estates of deceased claimholders.  Indeed, as explained in more detail above, Congress explicitly and unambiguously barred recovery under the Helms-Burton Act for any U.S. nationals who inherited a claim to Confiscated Property after March 12, 1996.  *Gonzalez*, 835 Fed. Appx. at 1012.  In doing so, Congress expressed its clear intent to make Helms-Burton Act relief available *only* to those potential plaintiffs who held valid claims before March 12, 1996 and *not* to their descendants or the beneficiaries of their estates.  Allowing descendants of deceased claimants to sue in their capacities as administrators of their ancestors' estates would frustrate this congressional intent and provide a loophole to recovery for plaintiffs who Congress expressly barred from recovery.  Accordingly, the four Estate Plaintiffs

---

portion of that claim."  Compl. ¶¶ 14-26.  No factual allegations support the alternative assertions in the Complaint—either that Ms. Blanco de Fernandez's siblings' claims passed to their descendants or that they *did not* and remain with the siblings' estates.

are not proper plaintiffs under the Helms-Burton Act, and the Court must dismiss their claims.

**IV.    TITLE III VIOLATES THE DUE PROCESS CLAUSE BECAUSE ITS VAGUE LIABILITY PROVISIONS LEAD TO EXCESSIVE AND ARBITRARY PENALTIES**

The Helms-Burton Act's Title III liability and penalty provisions are facially unconstitutional.  Title III provides for claims against those who "traffic" in confiscated property for the value of the property at the time of confiscation, plus interest, as well as the possibility of treble damages and legal fees, irrespective of the amount of economic benefit derived by the person being held liable.  This is incongruous with the Act's congressionally-stated purpose to compensate U.S. nationals and "to deter trafficking in wrongfully confiscated property" in a way "that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11).

The Due Process Clause of the Fourteenth Amendment prohibits imposing "grossly excessive or arbitrary punishments" on civil defendants.  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  The Supreme Court has, for a century, held that a civil remedy fixed by Congress violates due process where a penalty is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962 (8th Cir. 2019) (quoting *St. Louis, I.M. & S. Ty. Co. v. Williams*, 251 U.S. 63, 67 (1919)) (applying this standard as "still good law," and reducing the "shockingly large" fixed statutory award ($1.6 billion) for class TCPA violations based on defendant-caller's belief that it was complying with an unsettled statutory scheme and the class's lack of injury from the calls).

Title III's remedy is exactly the kind of punitive and arbitrary, rather than compensatory, penalty that the Due Process Clause prohibits.  Congress did not offer any justification—nor could

it—for a scenario in which a company could be held liable for the fair value of property confiscated sixty years ago by the Cuban government.[12]

Moreover, the arbitrary and oppressive nature of Title III's penalty provisions are made worse by the facially and unconstitutionally vague definition of "traffics" in the Act. Subsections (ii) and (iii) of 22 U.S.C. § 6023(13)(A) subject defendants to liability for indirect, rather than direct, forms of "trafficking" (i.e. merely "using" or "benefiting from" or "profiting from" confiscated property). But these provisions are so vaguely defined, and they stretch so far beyond conduct that causes harm to owners of a claim to confiscated property, that they preclude anyone from knowing or deciphering what it means to "traffic" in property.[13] Not only are subsections (ii) and (iii) of Section 6023(13)(A)'s definition of "traffics" unconstitutionally vague, but because the indirect "trafficking" they purport to punish is so unrelated to any harm caused to claimholders, imposing Title III's extreme penalty provisions on indirect "traffickers" will *never* be commensurate with the harm such "trafficking" purportedly causes.

Indeed, the Plaintiffs here do not seek an award based on the amount of any harm Crowley caused them, nor any "profits" Crowley allegedly gained from "trafficking." Instead, Plaintiffs

---

[12] The arbitrariness of this right of action is further demonstrated by the fact that a claimant's ability to be compensated for confiscated property disappears the moment the U.S. government believes the Cuban government ceases to be socialist. *See* 22 U.S.C. § 6082(h)(1)(B).

[13] "[A] law [violates] the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. State of Pa.*, 382 U.S. 399, 402-03 (1966). The Due Process Clause's demand for fair notice, often applied to criminal statutes, applies equally to civil statutes that are punitive and raise a stronger "need for clarity." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212-13 (2018); *see FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.").

seek the fair market value of all of the Confiscated Property, trebled, from Crowley and several other companies who allegedly "traffic" in the Confiscated Property.[14]   Compl. ¶ 167.  It is inconceivable that, if Plaintiffs are successful in each of their suits, a multi-billion dollar windfall is the proper remedy to either (1) compensate them for the value of the Confiscated Property or (2) "deny traffickers any profits" earned specifically from "trafficking"—yet, this is precisely how Plaintiffs (and others) interpret the statute.  Congress intended for Title III to provide an immediate deterring effect, not a multi-decade suspension resulting in the exponential growth of potential claims.[15]  Punishing a company for purportedly "trafficking"—merely because it called at the Port of Mariel in the course of delivering shipments that were *explicitly* authorized by the U.S. government—by making it liable for more than $1 billion, apparently three-times the value of property that was taken by the Cuban government more than sixty years ago—is arbitrary and oppressive.  *State Farm Mut. Auto Ins. Co.*, 538 U.S. at 416; *Golan*, 930 F.3d at 962.  Accordingly, any award under Title III fails to serve its congressionally-stated purpose, imposes a grossly disproportionate penalty, violates Crowley's due process rights, and is unconstitutional.

## CONCLUSION

For the foregoing reasons, Crowley respectfully requests that this Court enter an order granting this motion and dismissing the Second Amended Complaint, in its entirety, with prejudice.

---

[14] Plaintiffs have filed two other lawsuits seeking similar relief.  *See supra* footnote 6.

[15]  *See* Phil Peters, Cuba Research Ctr. (Dec. 13, 2018), *available at* https://www.cubastandard.com/analysis-activating-title-iii-of-helms-burton/ ("[The Act] is not really about satisfying property claims . . . [T]he law's authors aimed to damage Cuba's economy at a time when it was 'vulnerable to international economic pressure.'").

**REQUEST FOR HEARING**

Crowley respectfully submits that oral argument will be beneficial to adequately argue the merits of this motion and that it will significantly aid this Court in the decisional process, especially given the novelty of litigation under Title III of the Helms-Burton Act.  Crowley estimates that one hour will be required for the hearing.

DATED: July 20, 2021                                    Respectfully submitted,


                                                                /s/  *James Douglas Baldridge*
                                                                James Douglas Baldridge (Florida Bar No. 708070)
                                                                Katherine Wright Morrone (admitted *pro hac vice*)
                                                                VENABLE LLP
                                                                600 Massachusetts Avenue, NW
                                                                Washington, DC 20001
                                                                (202) 344-4703 (phone)
                                                                (202) 344-8300 (fax)
                                                                JDBaldridge@Venable.com
                                                                KWMorrone@Venable.com

                                                                *Counsel for the Crowley Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2021, a copy of the foregoing Motion to Dismiss the Second Amended Complaint and Incorporated Memorandum of Law was filed through the Court's CM/ECF system and electronically served on counsel for the Plaintiffs.


<u>*/s/ James Douglas Baldridge*</u>
James Douglas Baldridge