**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 21-cv-20443-GAYLES/TORRES

**ODETTE BLANCO DE FERNANDEZ,**
et al.,

      **Plaintiffs,**

v.

**CROWLEY HOLDINGS, INC., et al.,**

      **Defendants.**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint (the "Motion") [ECF No. 59]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion shall be granted in part.

## BACKGROUND

This action is one of several that United States nationals, including Plaintiffs, have filed following the Trump Administration's activation of Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021, *et seq.* (the "Act") on May 2, 2019. In each of these actions, the plaintiffs seek compensation under the Act from defendants who have profited from using property in Cuba that plaintiffs owned before the Cuban revolution. Here, Defendants Crowley Holdings, Inc., Crowley Maritime Corporation, Crowley Liner Services, Inc., Crowley Latin America Services, LLC, and Crowley Logistics, Inc. (collectively the "Defendants") have moved to dismiss for lack of standing and failure to state a claim.

1

I.      **Plaintiffs' Claim to Property Confiscated by the Cuban Government**

According to the Second Amended Complaint ("SAC"), Plaintiff Odette Blanco de Fernandez *née* Blanco Rosell ("Odette"), Alfredo Blanco Rosell ("Alfredo"), Byron Blanco Rosell ("Byron"), Enrique Blanco Rosell ("Enrique"), and Florentino Blanco Rosell ("Florentino") (collectively the "Blanco Rosell Siblings") owned Maritima Mariel SA, a Cuban corporation established in 1954.[1] [ECF No. 50 ¶ 88]. In 1955, the Cuban Government granted to Maritima Mariel a 70-year concession to develop docks, warehouses, and port facilities in Mariel Bay, Cuba (the "Concession"). *Id*. ¶ 89. The Concession also granted Maritima Mariel a series of "exceptional" rights in Mariel Bay including the right to occupy and use the land and waters to execute projects, the right of mandatory expropriation, the right to impose easements, and the right to evict tenants. *Id*. ¶ 90. The Blanco Rosell Siblings also owned several other companies, including Compania Azucarera Merial S.A.[2] ("Azucarera Merial"), and approximately 11,000 acres of land around Mariel Bay. On September 29, 1960, the Cuban government confiscated all of the Blanco Rosell Siblings' property and rights, including Maritima Mariel, the Concession, Central San Ramón, and Azucarera Mariel (the "Confiscated Property"). *Id*. ¶¶ 96-97. The Blanco Rosell Siblings then fled Cuba and became United States Citizens.[3] *Id.* at ¶ 5.

The Cuban government eventually incorporated the Confiscated Property into the Zona Especial de Desarollo Mariel ("ZEDM"), a special economic zone in Mariel Bay, without the authorization of the Blanco Rosell Siblings. *Id.* ¶ 32, 104-105. In 2009, the Cuban government and

---

[1] Alfredo, Byron, Enrique, and Florentino are deceased. In addition to Odette, Plaintiffs in this action include Alfredo, Byron, Enrique, Florentino's estates (the "Estates") and heirs (the "Heirs").
[2] Azucarera Merial owned and operated Central San Ramón sugar mill. [ECF No. 50 ¶93].
[3] The Blanco Rosell Siblings became United States citizens before March 12, 1996, the date the Helms-Burton Act was signed into law.  [ECF No. 50 ¶ 5].

2

non-Cuban corporate partners rebuilt the Port of Mariel and constructed the Terminal de Contendores del Mariel (the "Container Terminal") in the ZEDM.

## II.     Congress Passes the Act

In 1996, Congress passed the Act, in part, to deter trafficking in property wrongly confiscated by the Cuban government. 22 U.S.C. § 6081. To achieve this purpose, Congress established "a new statutory remedy available (if not suspended) to 'United States nationals who were the victims of these confiscations . . . [to] deny traffickers any profits from economically exploiting Castro's wrongful seizures.'" *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (quoting 22 U.S.C. § 6081(11)). Under the Act, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A).

The Act includes a provision which grants the President the ability to suspend the right to bring a private action under it for successive six-month periods. 22 U.S.C. § 6085(c). From its enactment in 1996 until 2019, every President suspended the Act's private action provision. On May 2, 2019, President Trump allowed the suspension to expire and opened the door for this action.

## III.    Alleged Trafficking

Defendants[4] are in the business of transporting freight between the United States and foreign ports, including the Port of Mariel in Mariel Bay. [ECF No. 50]. Defendants' container ships from Florida routinely "call"[5] at the Container Terminal. *Id.* ¶ 113. While there, Defendants

---

[4] Defendant Crowley Holdings is the parent company of Defendants Crowley Maritime, Crowley Liner Services, Crowley Latin America Services, and Crowley Logistics. Defendants own and operate vessels, and operations relating to vessels, for the transportation of freight on the high seas. [ECF No. 50 ¶ 27].
[5] "Calling" at a port means that containers are either offloaded or loaded at a Port of Call. [ECF No. 50 ¶ 33].

dock their ships, load and unload containers, and use the Container Terminal's services. *Id.* ¶ 33. Defendants contract with the Container Terminal, Amacenese Universales S.A. ("AUSA"), the Cuban state-owned entity that runs the container storage yard, and ZEDM to use these services and, according to Plaintiffs, benefit from the use of the Container Terminal and, therefore, the Confiscated Property.

## IV. This Action

On May 18, 2021, Plaintiffs filed the SAC alleging a claim for damages under the Act. [ECF No. 50]. Defendants now jointly move to dismiss arguing (1) Plaintiffs lack Article III standing; (2) Plaintiffs fail to state a claim; (3) none of the Plaintiffs are eligible to sue under the Act; and (4) Title III of the Act is facially unconstitutional. [ECF No. 59].

## LEGAL STANDARDS

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1251 (internal quotation omitted). By contrast, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* Defendants' Motion launches a facial attack on Plaintiffs' standing.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause

4

of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I. Standing

"Article III of the Constitution limits federal courts to deciding 'Cases' or 'Controversies.'" *Muranksy v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (citing U.S. Const. art. III, § 2). The doctrines of standing, ripeness, and mootness govern whether an action presents an actual case or controversy. *Id.* At issue here is the doctrine of standing.

Standing "is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin*, 930 F.3d 1225, 1232 (11th Cir. 2019). It is not a "mere pleading requirement[] but rather an indispensable part of the plaintiff's case . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*citing Lujan*, 504 U.S. at 560–61). "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muranksy*, 979 F.3d at 924.

#### A. Injury-In-Fact

Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To demonstrate an injury

in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "At the pleading stage of a case, 'general factual allegations of injury' can suffice." *Muranksy*, 979 F.3d at 924 (quoting *Lujan*, 504 U.S. at 561).

### 1. Legally Protected Interest

"No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1191 (S.D. Fla. 2020) (quoting *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir. 1993)).[6] "That interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Id.* (internal citations and quotations omitted). Here, Plaintiffs allege a current property interest in the Confiscated Property based on their prior ownership and the Concession. That interest is protected by the Act "which conveys a *right* to prevent third-party use of the same." *Id.* (emphasis in original).[7]

### 2. Concrete

Though Plaintiffs have alleged an invasion of a legally protected interest, they must still allege that they have suffered a concrete and particularized injury. *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019).[8] A concrete injury is "real" and not "abstract." *Spokeo*, 136 S. Ct. at

---

[6] In September 2020, United States District Judge Beth Bloom issued orders finding Plaintiff Havana Docks Corporation had standing in three related Helms Burton Act cases in this district filed against cruise ship operators docking in Cuba. *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177 (S.D. Fla. 2020); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215 (S.D. Fla. 2020); *Havana Docks Corp. v. Carnival Corp.*, No. 19-CIV-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020) (the "*Havana Docks* cases"). The Court cites to the *Havana Docks v. MSC Cruises* order, but the holdings in all the *Havana Docks* cases are the same.
[7] That Plaintiffs held a 70-year concession rather than full ownership of the Port of Mariel has no bearing on the standing analysis. The Act includes an expansive definition of "property" including "any property . . . whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023.
[8] Though Defendants make no argument on this point, the Court finds that Plaintiff's alleged injury is also actual or imminent. *See Spokeo*, 136 S. Ct. at 1547.

1548; *see also Muransky*, 979 F.3d at 925 ("A lot of ink has been spilled to explain what concrete means, but the best word may also be the simplest–'real.'") (quoting *Spokeo*, 136 S. Ct. at 1548).

"The Supreme Court has explained that '[c]entral to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms.'" *Glen v. American Airlines, Inc.*, No. 20-10903, 2021 WL 3285307, at *2 (5th Cir. Aug. 2, 2021). Here, Plaintiffs allege that they were harmed when Defendants used the Confiscated Property "without consent from or paying adequate compensation to Plaintiffs." [ECF No. 50 ¶ 144]. This harm "bears a close relationship to unjust enrichment, which has indisputable common-law roots." *Glen*, 2021 WL 3285307, at *2. Indeed, Congress passed the Act, in part, because it found the remedies for "unjust enrichment from the use of wrongfully confiscated property . . . by private entities at the expense of the rightful owners of the property" to be ineffective. 22 U.S.C. § 6081(8). *See Havana Docks*, 484 F. Supp. 3d at 1192 (finding a concrete injury where the plaintiff "allege[d] that [defendant] profited from its use of the Subject Property at [plaintiff's] expense."). Accordingly, the Court finds that Plaintiffs have alleged a concrete and particularized harm.

      **B.**    **Traceability**

To have standing, Plaintiffs must also show that their injuries are "fairly traceable" to Defendants' use of the Confiscated Property. *Spokeo*, 136 S. Ct. at 1547. "To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.'" *Glen*, 2021 WL 3285307 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)). The SAC alleges that Defendants profited from their use of the Confiscated Property without compensating Plaintiffs. *See* [ECF No. 1 ¶¶ 1, 7, 11]. Accordingly, like in the *Glen* and the *Havana Docks* cases,

7

"there exists a causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *Havana Docks*, 484 F. Supp. 3d at 1230. Therefore, the Court finds Plaintiff has adequately alleged traceability.

### C. Redressability

"The element of redressability requires that 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561)). The parties do not dispute, and the Court agrees, that the element of redressability is properly alleged here. Accordingly, Plaintiffs have sufficiently established, at this stage of the litigation, that they have standing, and the Motion shall be denied on this ground.

## II. The Complaint States a Claim

Defendants argue that the SAC must be dismissed because it fails to adequately allege that (1) Plaintiffs' own a claim to the Container Terminal or the Concession; (2) Defendants' alleged conduct constitutes "trafficking"; and (3) Defendants' use of the Container Terminal is not "incident to lawful travel to Cuba." [ECF No. 59]. The Court disagrees.

As set forth above, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." 22 U.S.C. 6082(a)(1)(A). "Traffics", under the Act, is defined as follows:

> (A) As used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property if that person knowingly and intentionally—
>
> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property.

8

>> (ii) engages in a commercial activity using or otherwise benefitting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,
>
> without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13)(A). Subparagraph (B) sets forth exceptions to conduct that would otherwise constitute trafficking and provides, in relevant part, that trafficking "does not include . . . transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B). This exception is commonly referred to as the lawful travel exception or defense.

### A. Plaintiffs Allege Ownership of a Claim

Defendants focus much of their argument on the notion that Plaintiffs do not "own a claim" to the Container Terminal because ZEDM's ports, docks, warehouses, and facilities did not exist until 2009, nearly fifty years after the Cuban government confiscated Plaintiffs' property. Defendants' argument is without merit. The SAC alleges that Cuba "incorporated the Confiscated Property into the ZEDM without the authorization of Plaintiffs", [ECF No. 50 ¶ 106], and the "Container Terminal subsumes [Plaintiffs'] 70-Year Concession rights." *Id.* ¶¶ 108, 110. This is sufficient to allege ownership of a claim under the Act. *See De Fernandez v. Seaboard Marine, Ltd.*, No. 20-cv-25176, 2021 WL 3173213, at *6 (S.D. Fla. 2021) (holding that the same Plaintiffs as in this action sufficiently alleged ownership of a claim based on the Cuban government's confiscation of Plaintiffs' 70-year Concession rights.).[9]

---

[9] To the extent Defendants argue that Plaintiffs might have failed to satisfy certain conditions of the Concession which, if not satisfied, would have resulted in forfeiture, these are fact sensitive inquiries which cannot be resolved at this stage of the litigation.

### B. Plaintiffs Allege "Trafficking"

The Court finds that Plaintiffs sufficiently allege trafficking under the Act. First, Plaintiffs allege that Defendants use the Container Terminal, including storing their containers in the storage yard, and that using the Confiscated Property makes "[Defendants'] container business at the Port of Mariel possible and profitable." [ECF No. 50 at ¶ 114]. This is enough to plausibly allege that Defendants "engage[d] in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13)(A)(ii). In addition, Plaintiffs allege that ZEDM and AUSA all traffic in the Confiscated Property by developing and operating the Port of Mariel, and that Defendants profit from ZEDM and AUSA's trafficking in the property. This is enough to plausibly allege that Defendants "profit[] from trafficking . . . by another person, or otherwise engage[] in trafficking . . . through another person." 22 U.S.C. § 6023(13)(A)(iii). Accordingly, the Court finds that Plaintiffs have sufficiently alleged a violation of the Act.[10]

### C. The Lawful Travel Exception is an Affirmative Defense

Defendants argue that Plaintiffs are required to plead around the lawful travel defense set forth in § 6023(13). The Court disagrees. "The lawful travel exception is an affirmative defense to trafficking that must be established by [Defendants], not negated by Plaintiff." *Garcia-Bengochea v. Carnival Corp*, 407 F. Supp. 3d 1281, 1286 (S.D. Fla. 2019).[11] Therefore, the burden is on Defendants to establish that their activity in the Port of Mariel and Container Terminals was incident to lawful travel to Cuba. *Id.* at 1287. As this defense is not apparent on the face of the SAC, it is inappropriate for consideration at this stage of the litigation. *Id.*

---

[10] In a footnote, Defendants argue that Plaintiffs have not alleged that Defendants acted "knowingly and intentionally." [ECF No. 59, p.15 n. 5]. Defendants assert that Plaintiffs owned no claim to the Port of Mariel and that, therefore, Defendants could not intend to traffic in property that was not actually confiscated. However, as noted above, this Court finds that Plaintiffs have a claim to the Confiscated Property.

[11] The Court notes that consolidated appeals in *Mario Del Valle et al. v. Trivago GMBH* and *Garcia-Bengochea v. Carnival* are pending before the Eleventh Circuit. *See* Case No. 20-12960.

**III.     The Estates and Heirs Are Not Eligible to Sue**

Defendants argue that the Estates and Heirs do not have an actionable ownership interest in the Confiscated Property because they acquired their claims after March 12, 1996. On this point, the Court agrees.

The Act provides that "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). The plain language of the Act "instructs that a United States national cannot bring an action under Title III 'unless such national' acquires an interest to the confiscated property before March 12, 1996[,]" and "the United States national who acquired ownership of the claim must be the *same* United States national who brings the Title III action." *De Fernandez,* 2021 WL 3173213, at *8 (citing *Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020), *aff'd*, 835 F. App'x 1011 (11th Cir. 2021)). Here, the Estates and Heirs have not plausibly alleged that they acquired their claims to the Confiscated Property before March 12, 1996. Accordingly, they cannot maintain a cause of action under Title III of the Act.

**IV.     Title III Does Not Violate the Due Process Clause**

Defendants also argue that the Act's Title III liability and penalty provisions are facially unconstitutional. In particular, Defendants contend that Title III's remedy is punitive and arbitrary, rather than compensatory, and therefore is prohibited by the Due Process Clause. In addition, Defendants argue that the Act's term, "trafficking", is unconstitutionally vague.

"[A] facial challenge will succeed only if the statute could never be applied in a constitutional manner." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). Indeed, the "mere possibility of a constitutional application is enough to defeat a facial

challenge to [a] statute." *Id.* at 1313. Here, Defendants have not shown that the Act can never be applied in a constitutional manner. As detailed by the Court in *Havana Docks*:

> Although the Motion contends that the penalty Title III generally imposes upon defendants for trafficking is arbitrary and excessive in violation of the Due Process Clause, MSC makes no attempt to address how Title III's statutory penalty *always* yields unconstitutionally excessive results, as required for a facial challenge. Rather, MSC broadly states that "Title III imposes penalties on defendants that are so disconnected from any actual damages they might cause to plaintiffs as to be irrational." Yet, "it is conceivable that in the future a party with actual harm that is difficult to compute will bring a case seeking statutory damages. In such a case, the actual harm might be very close to the statutory damages." Indeed, it is entirely plausible that a claimant under Title III might seek to recover statutory damages in an amount close to the amount of profits generated from a defendant's trafficking.

*Havana Docks Corp.*, 484 F. Supp. 3d at 1203 (internal quotations and citations omitted). Accordingly, the Motion on this ground is denied.

In addition, the Court does not find the term "trafficking" to be unconstitutionally vague. A civil statute "is not unconstitutionally vague if persons of reasonable intelligence can derive a core meaning from the statute." *Seniors Civil Lib. Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992) (internal citations and quotations omitted). This Court, and the many other courts interpreting the Act, have not had difficulty in discerning the meaning of "trafficking." Accordingly, the Motion on this ground is denied.

## Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Second Amended Complaint, [ECF No. 50], is **GRANTED in PART and DENIED in PART**.

2. The following Plaintiffs are dismissed from this action: the Estate of Alfredo Blanco Rosell, Jr., the Estate of Byron Blanco Rosell, the Estate of Enrique Blanco Rosell, the Estate of Florentino Blanco Rosell, Emma Ruth Blanco, Hebe Blanco Miyares, Sergio

Blanco De La Torre, Eduardo Blanco De La Torre, Liana Maria Blanco, Susannah Valentina Blanco, Lydia Blanco Bonafonte, Jacqueline M. Delgado, Byron Diaz Blanco Jr., Magdelena Blanco Montoto, Florentino Blanco De La Torre, Joseph E. Bushman, Carlos Blanco De La Torre, and Guillermo Blanco De La Torre.

3. Defendants shall file an answer to the Second Amended Complaint [ECF No. 50] within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of March, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE